UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------:
                                                           :
JOSEPH UMBACH,                          :        CIVIL ACTION NO.
                                        :
            Plaintiff,                  :
                                        :
      v.                                :
                                        :
CARRINGTON INVESTMENT PARTNERS          :
(US), LP, CARRINGTON CAPITAL            :
MANAGEMENT, LLC AND BRUCE ROSE          :
                                        :
            Defendants.                 :
                                        :        APRIL 1, 2008
-----------------------------------------------------------:
```

## COMPLAINT

Plaintiff, Joseph Umbach ("Umbach" or "Plaintiff"), by and through his undersigned counsel, files this Complaint against Defendants Carrington Investment Partners (US), L.P. (the "Fund"), Carrington Capital Management, LLC (the "General Partner") and Bruce Rose ("Rose") (collectively, the "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action by Plaintiff for a declaratory judgment and/or equitable relief that arises from Defendants' wrongful refusal to honor a valid withdrawal request submitted by Ozcar Multi Strategies LLC ("OMS") for the payment of its investment interest in the Fund.

2.      OMS became of limited partner of the Fund when it invested approximately $1 million into the Fund on or about May 27, 2005.

3.      On or about December 7, 2007, OMS assigned all of its right, title and interest with respect to its investment interest in the Fund to Plaintiff.

4.      Upon information and belief, the Fund, a limited partnership, is a hedge fund that invests in securities resulting from the origination of sub prime mortgage loans.

5.      Pursuant to the Fund's limited partnership agreement (the "Limited Partnership Agreement") and absent a "side agreement" between the Fund and a limited partner to the contrary, limited partners were not permitted to redeem their interests in the Fund until after the expiration of a 12-month lock-up period commencing on the date of an investment.  Thereafter, investment interests were permitted to be withdrawn quarterly upon 30 days' written notice.

6.      To induce OMS to invest in the Fund, Defendants represented to OMS and Umbach -- both orally and in writing --  that any investment either investor may make into the Fund would always be redeemable quarterly on 30 days' written notice.  In this connection, Rose executed a side letter agreement, dated May 27, 2005, on behalf of Defendants, whereby the General Partner waived the 12-month lock-up period with respect to any investments that OMS or Umbach may make into the Fund (the "Redemption Side Letter").

7.      The Redemption Side Letter was specifically permitted by the Fund pursuant to Section 3.9.1 of the Fund's Limited Partnership Agreement.

8.      On or about July 11, 2007, in accordance with the Redemption Side Letter and the Fund's Limited Partnership Agreement, OMS provided 30 days' written notice (the "Withdrawal Request"), designating September 30, 2007 as its withdrawal date (the "Withdrawal Date").

9.      In connection with the Withdrawal Request and pursuant to Section 3.9.1 of the Fund's Limited Partnership Agreement, the Fund was required to pay OMS ninety percent (90%) of its investment interest in the Fund within twenty (20) business days after the Withdrawal Date, i.e., October 20, 2007, and the remainder (with interest), if any, after the completion of an audit.

-2-

10.     However, in breach of the Redemption Side Letter and the Fund's Limited Partnership Agreement, the Fund has failed to pay OMS any portion of it investment interest in the Fund.

11.     Instead, Defendants' have argued that the exemption from the 12-month lock-up period set forth in the Redemption Side Letter has expired because it was limited to only the first 12 months of OMS's investment in the Fund.  Moreover, Defendants have improperly induced other limited partners of the Fund to amend its Limited Partnership Agreement, whereby, among other things, such amendment purportedly (i) rescinded OMS's validly exercised Withdrawal Request of July 11, 2007; and (ii) involuntarily subjected OMS's investment interest in the Fund to a new 12-month lock-up period, thereby freezing OMS's investment in the Fund until at least October 1, 2008.

12.     The purported amendment to the Fund's Limited Partnership Agreement (i) is an impermissible *ex post facto* action that cannot legally vitiate or impair the already validly exercised Withdrawal Request of OMS; (ii) violated the terms of the Redemption Side Letter, the Fund's Limited Partnership Agreement and the Fund's Confidential Offering Memorandum; and (iii) was not adopted in a fair manner because the General Partner breached its fiduciary duty to the limited partners in connection with the related amendment vote.

13.     Accordingly, Plaintiff is seeks a declaratory judgment pursuant to 28 U.S.C. 2201(a) (Declaratory Judgment Act) that (i) OMS's Withdrawal Request of July 11, 2007 was a vested contractual right that was validly exercised and cannot be impaired or rescinded by the aforementioned amendment; (ii) the amendment to the Fund's limited partnership agreement is null and void with respect to OMS's interest in the Fund as an illegal or unenforceable *ex post facto* amendment that cannot rescind OMS's Withdrawal Request or impose a new 12-month

lock-up period on its investment; and/or (iii) the amendment to the Fund's Limited Partnership

Agreement is null and void with respect to all limited partners because (A) it did not comply

with the notice solicitation requirements of the Fund's Limited Partnership Agreement and/or

(B) Defendants, in violation of their fiduciary duties to the limited partners, improperly obtained

consents for the amendment from the Fund's limited partners through the making of false

representations and in contravention of the provisions of the Limited Partnership Agreement.

14.     In addition to the foregoing, Plaintiff seeks rescission of OMS's investment in the

Fund because Defendants fraudulently failed to disclose at the time of the investment that the

Redemption Side Letter would only provide OMS with quarterly redemption rights on 30 days'

written notice for only a limited period of 12-months after its investment was made.  As a result

of such a deliberate omission of a material fact, Defendants knowingly exposed OMS's

investment to the unacceptable risk that its investment could be subject to a lock-up period if the

investment remained in the Fund for longer than 12 months.

## JURISDICTION, THE PARTIES AND VENUE

15.     This court has jurisdiction pursuant to Section 27 of the Securities Exchange Act

of 1934 [15 U.S.C. § 78aa] (the "1934 Act").   The claims asserted herein arise under § 10(b) and

§ 20(a) of the 1934 Act and Rule 10b-5.  Pendent jurisdiction over other claims and parties

arising from the same nucleus of operative facts lies in consideration of judicial economy,

convenience, and fairness to litigants.  This action also arises under 28 U.S.C. 2201(a)

(Declaratory Judgment Act) and 28 U.S.C. 1332(a)(1), i.e., as a civil action between citizens of

different states with the matter in controversy exceeding the value of $75,000.00, exclusive of

interest and costs.  According to information provided by Defendants, the value of the OMS's

investment interest in the Fund as of September 30, 2007 (i.e., the Withdrawal Date"), was

-4-

approximately $1.3 million. Plaintiff invested $1 million into the Fund on or about May 27, 2005. Unless Plaintiff obtains the declaratory judgment sought herein, the value of OMS's initial investment of $1 million could be lost in its entirety due to the unacceptable risk of being exposed to deteriorating market conditions.

16.     Plaintiff Joseph Umbach is an individual residing in the State of Florida.

17.     Upon information and belief, Defendant Carrington Investment Partners (US), LP. (the "Fund") is and at all relevant times has been a limited partnership organized and existing under the laws of the State of Delaware with a principal place of business in this District in Greenwich, Connecticut.

18.     Upon information and belief, Defendant Carrington Capital Management, LLC (the "General Partner") is and at all relevant times has been a limited liability company organized and existing under the laws of the State of Delaware with offices in this District in Greenwich, Connecticut. The General Partner is the general partner of the Fund.

19.     Upon information and belief, Bruce Rose ("Rose") is an individual residing in the State of Connecticut. At all relevant times, Rose was and is the president, sole manager and member of the General Partner.

20.     Upon information and belief, at all times relevant hereto, Rose, the General Partner, and the Fund were either the agent or principal of each other, and, in such capacity or capacities, participated in the acts and conduct alleged herein and incurred liability to OMS therefor.

21.     Defendants are subject to the personal jurisdiction of this Court because, at all times material hereto, Defendants were and are residents of Connecticut. In addition and

pursuant to the 1934 Act, this Court has personal jurisdiction over the Defendants for the acts and omissions alleged herein.  Venue is proper in this Court.

**Facts Constituting Strong Circumstantial
Evidence of Conscious Misbehavior or Recklessness**

22.    Upon information and belief, Rose is the founder of the Fund, which was established as a limited partnership to operate as a hedge fund.  The Fund is operated as a typical hedge fund inasmuch as it (i) is a private investment pool that is managed by an investment advisor, i.e., the General Partner, who is registered with the Securities and Exchange Commission, (ii) is generally open only to "Accredited Investors" and "Qualified Clients" with certain minimum net worths, and (iii) provides limited information to investors and the public about its holdings and investment activities.

23.    On or about May 12,  2005, in an attempt to induce an investment in the Fund, Defendants forwarded various Fund offering documents to Umbach,  including, among other things, its Confidential Offering Memorandum, Limited Partnership Agreement and Subscription Agreement, as well as other marketing materials and performance figures (collectively, the "Fund Documents").

24.    The Fund Documents were transmitted by email from Connecticut to Umbach, who was in Florida.

25.    After reviewing the Fund Documents and other items from Defendants, Umbach advised Rose on or about May 18, 2005 that neither he nor any of his affiliated investing entities would invest in the Fund due to its 12-month lock-up provision, which prohibited the withdrawal of an investment until such investment has been invested in the Fund for at least 12 months. Thereafter, investments could be redeemed quarterly on 30 days' written notice.

-6-

26.     In this connection, Umbach further advised Rose that the existence of any lock-up period would severely handicap his ability to include the Fund in a portfolio of hedge funds that he had established with OMS as part of a leveraged investment program he had implemented through BNP Paribas (which controlled OMS).  Accordingly, Umbach specifically advised Rose that Defendants would be required to eliminate or waive permanently all lock-up periods with respect to any investments he or any of is affiliated investing entities, including OMS, would make into the Fund.

27.     At the time of these discussions, the Fund's lock-up period pursuant to Section 3.9.1 of the Fund's Limited Partnership Agreement consisted of 12 months.

28.     On or about May 18, 2005, Rose (who was located in Connecticut) spoke with Umbach (who was located in Florida) on an interstate telephone call in which Rose represented to Umbach, that, in the event Umbach or any of his affiliated investing entities, including OMS, invested in the Fund, any such investment would not be subject to any lock-up period at any time, and could at all times be redeemed on a quarterly basis with only 30 days' prior written notice (the "Quarterly Redemption Right").  At the time, Rose advised Umbach that such representations could also be relayed to BNP and OMS for their benefit and reliance, which Umbach did on or about May 19, 2005 by telephone.

29.     In response to Rose's aforementioned representations, BNP and OMS requested from Umbach that he obtain from Defendants a written  side letter that (1) confirmed such Quarterly Redemption Right, (2) was specifically addressed and forwarded to BNP (which controlled OMS) by the Defendants, and (3) represented the applicability of the Quarterly Redemption Right with respect to any investment OMS may make into the Fund.  In response to such request, Defendants prepared a letter agreement, dated May 27, 2005 (the "Redemption

-7-

Side Letter"), which Defendants (in Connecticut) sent by facsimile to BNP (in New York) and Umbach (in Florida).

30.     A copy of the Redemption Side Letter signed by Rose and Umbach is attached hereto as Exhibit A.

31.     At the time the Redemption Side Letter was forwarded to BNP (for OMS's benefit), Defendants were aware that neither Umbach nor any of its investing affiliates, including OMS, would be willing to invest in the Fund if any such investment would not always be able to benefit from a Quarterly Redemption Right.  However, Defendants failed to disclose to Umbach or BNP (for OMS's benefit) that they intended at the time of its issuance that the Redemption Letter would only provide a limited Quarterly Redemption Right for only one year after an investment was made into the Fund.  In particular, Defendants did not disclose to Umbach and OMS that, one-year after an investment by OMS into the Fund, such investment could be subjected of a new, 12-month  lock-up period should Section 3.9.1 of the Fund's Limited Partnership Agreement's be amended.   In light of such a material omission of fact, Defendants knew at the time they issued the Redemption Side Letter that they would not honor the Quarterly Redemption Right for an investment by OMS if Section 3.9.1 of the Limited Partnership Agreement were amended to include a new lock-up period.  At all relevant times, Defendants were specifically aware that Umbach and its affiliated investing entities, including OMS, would only agree to invest in the Fund if any such investment was permanently afforded the Quarterly Redemption Right described above.

32.     Relying on Defendants' representations and material omissions described herein that any investment it made into the Fund would always be afforded a Quarterly Redemption Right, OMS invested $1 million in the Fund on or about May 27, 2005.

-8-

33.     On or about July 11, 2007, OMS validly exercised its right to redeem its investment interest under the terms of the Redemption Side Letter and the Limited Partnership Agreement by providing the Withdrawal Request to the General Partner and requesting the withdrawal of the entire amount of its investment in the Fund with a Withdrawal Date of September 30, 2007.

34.     On or about July 12, 2007, the General Partner confirmed acceptance of the Withdrawal Request with OMS.

35.     Under the provisions of the Fund Documents, the General Partner was required to commence processing the Withdrawal Request immediately upon its receipt of the Withdrawal Request.  In this connection, pursuant to Section 3.9.1 of the Limited Partnership Agreement, the General Partner was required to distribute ninety percent (90%) of OMS's redeemed investment interest in the Fund within twenty (20) business days of the Withdrawal Date, and the balance, if any, was to be distributed (with interest) to OMS after completion of an audit.

36.     The valuation of OMS's investment in the Fund as of the Withdrawal Date was approximately $1.3 million.  The Fund, however, has refused to distribute any funds to OMS anytime after the Withdrawal Date.

37.     Instead, on or about August 30, 2007, Defendants notified Plaintiff and the Fund's limited partners (including OMS) by email that they were proposing an amendment, dated August 30, 2007 (the "First Proposed Amendment"), to the Fund's Limited Partnership Agreement.  Among other things, the First Proposed Amendment would:  (i) impose on the limited partners a new "one-year commitment" to the Fund, i.e., a new 12-month lock-up period commencing on September 30, 2007, and (ii) unilaterally "rescind" the existing withdrawal

requests that had theretofore been received by the Fund from several limited partners, including OMS's Withdrawal Request of July 11, 2007.

38.     The General Partner, who advocated that the First Proposed Amendment be adopted, made several representations by email to the limited partners on August 30, 2007, which were intended to induce them to support such amendment.  Among other things, the General Partner stated that "at the request of majority of the Fund's Limited Partners" the General Partner was proposing the amendment  and that "after conversation with most of our Limited Partners, I [Rose] believe we have significantly more than the required support for the Amendment."  Upon information and belief, such representations were false and were made to induce the limited partners to consent to the proposed amendment or to refrain from voting, which would result in all uncast votes being automatically voted in favor of the proposed amendment pursuant to Section 6.3 of the Limited Partnership Agreement.

39.     The First Proposed Amendment, which made general references to the Fund's Limited Partnership Agreement (as well as another limited partnership agreement for an affiliated offshore fund managed by the General Partner), was defective and unenforceable not only because it was excessively vague and ambiguous, but also because it failed to identify with specificity any particular provisions of the Fund's Limited Partnership Agreement that were intended to be amended.  Rather the First Proposed Amendment was presented in a discursive narrative form.

40.     A copy of the First Proposed Amendment is attached hereto as Exhibit B.

41.     In connection with the First Proposed Amendment, the limited partners were advised that they were required to vote on such amendment by September 14, 2007.

42.     A copy of the Election Form pertaining to the vote for the First Proposed Amendment, which was disseminated to limited partners on August 31, 2007, is attached hereto as Exhibit C.

43.     On September 7, 2007, notwithstanding the First Proposed Amendment, the Fund disseminated by email to its limited partners a new proposed amendment, dated as of September 30, 2007 (the "Second Proposed Amendment"), which was also intended to amend the Fund's Limited Partnership Agreement.

44.     Like the First Proposed Amendment, the Second Proposed Amendment included terms to rescind existing withdrawals and to impose a new, mandatory 12-month lock-up period. However, the Second Proposed Amendment also contained materially different terms from the First Proposed Amendment.

45.     A copy of the Second Proposed Amendment is attached hereto as Exhibit D.

46.     In connection with the Second Proposed Amendment, the limited partners were advised that they were required to vote on such amendment by September 14, 2007.

47.     A copy of the revised Election Form pertaining to the vote for the Second Proposed Amendment is attached hereto as Exhibit E.

48.     On September 13, 2007, notwithstanding the prior dissemination of the First Proposed Amendment and the Second Proposed Amendment, the Fund disseminated by email yet another new proposed amendment, dated September 30, 2007 (the "Third Proposed Amendment"), which was also intended to amend the Fund's Limited Partnership Agreement.

49.     Like the First Proposed Amendment and the Second Proposed Amendment, the Third Proposed Amendment included terms to rescind existing withdrawals and to impose a new, mandatory 12-month lock-up period.  However, the Third Proposed Amendment also contained

materially different terms from the First Proposed Amendment and the Second Proposed

Amendment, respectively.

50.    A copy of the Third Proposed Amendment is attached hereto as Exhibit F.

51.    In connection with the Third Proposed Amendment, the limited partners were

now advised that they were required to vote on such new amendment by September 19, 2007,

instead of September 14, 2007.

52.    A copy of the revised Election Form pertaining to the vote for Third Proposed

Amendment is attached hereto as Exhibit G.

53.    Pursuant to Section 6.3 of the Fund's Limited Partnership Agreement, the General

Partner was required to provide the limited partners 20 days after notice of solicitation was

effected with respect to a proposed amendment in which to consent or object to such a proposed

amendment (the "Notice of Solicitation Requirement").

54.    Defendants failed to comply with the Notice of Solicitation Requirement with

respect to the First Proposed Amendment, the Second Proposed Amendment and the Third

Proposed Amendment.

55.    Despite written objections from OMS and Plaintiff concerning the legality and

enforceability of the Third Proposed Amendment, both on procedural and substantive grounds,

the Fund continued with the election process and informed the limited partners that the Third

Proposed Amendment was approved, thereby purportedly rescinding all existing withdrawal

requests and subjecting all limited partners to a new, mandatory 12-month lock up period.

## ACTUAL KNOWLEDGE AND OPPORTUNITY

56.    Upon information and belief, at all relevant times, Rose was the president, sole

manager and member of the General Partner.  Rose controlled each and every decision made by

-12-

the Fund and/or the General Partner, including, without limitation, the contents of all

correspondence emanating from said parties.  Rose was the sole person responsible for buying

and selling investments in the Fund, entering into side letters with limited partners, calculating

the value of such investments, controlling the distributions and redemptions from the Fund, and

disseminating to investors all information concerning the Fund.

## MOTIVATION FOR THE IMPROPER CONDUCT

57.     Defendants, including Rose, were motivated to commit fraud and to misrepresent

to Umbach and OMS that OMS's investment interest would always be redeemable quarterly on

30 days' notice of a request for redemption  because the compensation payable to the General

Partner and Rose were directly correlated to the total amount of money under management by

the Fund.

58.     Defendants, including Rose, were also motivated to refuse to honor the

withdrawal requests of its limited partners, including OMS's Withdrawal Request, because with

more funds to manage in the Fund, the Fund would be in a better position to continue its own

investment strategy, at the expense of  those limited partners seeking to withdraw from the Fund,

and because the General Partner and Rose would continue to receive greater compensation from

the  fees they would continue to receive from managing the Fund.

59.     Similarly, Defendants were aware that, if the Third Proposed Amendment was not

adopted, due to pending withdrawal requests from several limited partners, including OMS's

Withdrawal Request, the General Partner would be required to dissolve the Fund, in which case

the General Partner and Rose would suffer losses and would no longer be entitled to

compensation from managing the Fund.  Indeed, the election form for each of the three proposed

amendments specifically states that if the applicable proposed amendment is not approved by the

limited partners, then the General Partner intends to dissolve and liquidate the Fund. Moreover, each proposed amendment specifically provides that the General Partner would be entitled to continue to receive compensation for the new 12-month lock-up period imposed on all limited partners.

**COUNT I**
**<u>DECLARATORY JUDGMENT</u>**

60.     Pursuant to 28 U.S.C. 2201(a) (Declaratory Judgment Act), Plaintiff respectfully requests that the Court issue a declaratory judgment that (i) OMS's Withdrawal Request of July 11, 2007  was a vested contractual right that was properly exercised and that it cannot be impaired or rescinded by the adoption of the Third Proposed Amendment (as adopted, the "Third Amendment"); (ii) the Third Amendment to the Fund's Limited Partnership Agreement is null and void or unenforceable with respect to OMS's investment interest in the Fund because such an *ex post facto* amendment that cannot legally rescind OMS's Withdrawal Request or impose a new one-year lock-up period on OMS's investment; and/or (iii) the Third Amendment to the Fund's Limited Partnership Agreement is null and void with respect to all limited partners because (A) it did not comply with the terms of the Limited Partnership Agreement, including the Notice of Solicitation Requirement  and/or (B) Defendants, in breach of their fiduciary duties fraudulently obtained consents for the Third Proposed Amendment by making the aforementioned false representations, as described in paragraph 38 above, to limited partners who relied upon such false representations when they issued or refrained from issuing their respective consents.

-14-

**COUNT II**
**VIOLATIONS OF SECTION 10(B) OF THE**
**SECURITIES EXCHANGE ACT OF 1934 AS AMENDED**
**[15 U.S.C. § 78J(B)] AND RULE 10B-5 [17 C.F.R. § 240.10B-5] BY DEFENDANTS**

61.     Paragraphs 1 through 60 are hereby realleged and incorporated by reference

herein.

62.     Upon information and belief, from at least May 2005, to the present, Defendants,

in connection with the purchase and sale of securities in the form of limited partnership interests

in the Fund by the use of the means and instrumentalities of interstate commerce, directly and

indirectly, have employed and are employing devices, schemes and artifices to defraud; have

made and are making untrue statements of material fact and have omitted and are omitting to

state material facts necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading; and have engaged and are engaging

in acts, practices and courses of business which have operated and will operate as a fraud and

deceit upon purchasers of such securities, all as more fully described in paragraphs 28, 29 & 31

above.

63.     Defendants knew or were reckless in not knowing of the misrepresentations and

omissions of material facts described in paragraphs 28, 29 & 31 above.

64.     By reason of the activities described in paragraphs 28, 29 & 31 above, Defendants

have violated and are violating Section 10 (b) of the Securities Exchange Act of 1934 as

amended [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

65.     As a result of such violations, Plaintiff is entitled to rescission of OMS's initial

investment in the Fund and restitution of OMS's initial investment in the Fund plus applicable

interest.

**COUNT III**
**<u>BREACH OF FIDUCIARY DUTIES BY ALL DEFENDANTS</u>**

66.     Paragraphs 1 through 65 are hereby realleged and incorporated by reference herein.

67.     As a limited partnership of which OMS was a limited partner, the Fund owed a fiduciary duty to OMS.  As general partner of the Fund, the General Partner owed a fiduciary duty to OMS, a limited partner of the Fund. As managing member of the General Partner, Rose owed a fiduciary duty to OMS.  Due to Defendants' discretionary authority to manage OMS's investment, Defendants owed a fiduciary duty to OMS.  In breach of their fiduciary duties to OMS, Defendants committed, among other things, the following improper acts:

(i)     misrepresented to OMS and BNP and Plaintiff (for the benefit of OMS) that all investments in the Fund would never be subjected to a lock-up period and would always be redeemable quarterly upon 30 days' notice;

(ii)     failed to pay OMS any portion of the redemption amount of its investment interest that was payable after the Withdrawal Date;

(iii)     as described above, improperly arranged for the adoption of a purported Third Amendment to the Fund's Limited Partnership Agreement which could not legally terminate OMS's Quarterly Redemption Right or rescind its Withdrawal Request and/or impose a new 12-month lock-up period on OMS's investment.

68.     Defendants' breach of their fiduciary duties entitles Plaintiff to rescission of OMS's initial investment in the Fund and restitution of OMS's initial investment in the Fund plus applicable interest.

## COUNT IV
## <u>FRAUD BY ALL DEFENDANTS</u>

69.    Paragraphs 1 through 68 are hereby realleged and incorporated by reference herein.

70.    In an intentional, malicious and fraudulent scheme to cheat and defraud OMS and Umbach, Defendants made misrepresentations and omissions of material facts as described in detail in paragraphs 28, 29 & 31 above.

71.    In truth, at the time Defendants made said representations and omissions of material facts, they had no intention of fully performing the promises contained therein, purposely concealed their true intentions from Plaintiff and OMS, and intentionally and knowingly made false and fraudulent misrepresentations and omissions to induce Plaintiff and/or OMS to invest in the Fund and to maintain investments in the Fund.

72.    OMS, to its substantial detriment, reasonably relied on the aforementioned misrepresentations and omissions, believing them to be true, and caused OMS to purchase a limited partnership interest in the Fund and/or maintain

73.    Because Defendants fraudulently intended to induce Plaintiff and OMS to detrimentally rely on Defendants' intentional misrepresentations and omissions, and because OMS did detrimentally rely upon Defendants' intentional misrepresentations and omissions, and because Defendants concealed their true intentions from Plaintiff and OMS, Plaintiff is entitled to rescission of OMS's initial investment in the Fund and restitution of OMS's initial investment in the Fund, plus applicable interest.

**COUNT V**
**NEGLIGENT MISREPRESENTATION BY THE DEFENDANTS**

74.     Paragraphs 1 through 73 are hereby realleged and incorporated by reference herein.

75.     In making the misrepresentations and omissions described in paragraphs 28, 29 & 31 above to Plaintiff and OMS, the Defendants were careless and negligent in imparting the misrepresentations and omissions, had no reasonable grounds for believing the aforesaid representations to be true, or should have known them not to be true.  Plaintiff and OMS were expected to rely on the aforesaid misrepresentations and omissions and Defendants expressed the misrepresentations directly to Plaintiff and OMS with the knowledge that the misrepresentations and omissions would be relied and acted upon by OMS or Plaintiff.  Defendants negligently breached their duty owed to OMS and induced OMS to purchase an investment interest in the Fund and/or maintain an interest in the Fund.

76.     In detrimental reliance upon the aforesaid negligent misrepresentations and omissions, OMS purchased a limited partnership interest in the Fund and/or maintained an interest in the Fund.  But for the misrepresentations and omissions of the Defendants, OMS would not have purchased a limited partnership interest in the Fund and/or maintained an interest in the Fund.  Defendants, in the course of their business, profession, or employment, and/or in the transaction with OMS whereby OMS purchased a limited partnership interest in the Fund, supplied false information and guidance to OMS and Plaintiff in connection said transaction.  OMS and Plaintiff justifiably relied upon the information.  Defendants failed to exercise reasonable care or competence in obtaining or communicating said information to OMS and Plaintiff.

77.    Because of the negligent misrepresentations and omissions of the Defendants, Plaintiff is entitled to rescission of OMS's initial investment in the Fund and restitution of OMS's initial investment in the Fund, plus applicable interest.

## COUNT VI
## BREACH OF LIMITED PARTNERSHIP
## AGREEMENT, REDEMPTION LETTER, CONFIDENTIAL OFFERING
## MEMORANDUM AND SUBSCRIPTION AGREEMENT

78.    Paragraphs 1 through 77 are hereby realleged and incorporated by reference herein.

79.    In approximately May 2005, OMS entered into a written Limited Partnership Agreement and Subscription Agreement with the Fund in reliance upon the Fund Documents and the Redemption Letter, as well as the other representations and omissions set forth above. Pursuant to Fund's Limited Partnership Agreement and the Redemption Letter, OMS properly submitted its Withdrawal Request on July 11, 2007.

80.    In breach of the Fund's Documents and the Redemption Letter, the Fund has failed to pay OMS's the redemption of its interest in the Fund that was effective on September 30, 2007.

81.    As a result of said breaches of the Fund Documents and Redemption Letter, Plaintiff is entitled to rescission of the Limited Partnership Agreement and restitution of OMS's initial investment in the Fund, plus applicable interest.

## JURY DEMAND

82.     Plaintiff requests a trial by jury on all issues.


WHEREFORE, Plaintiff requests the following:

(A)     a declaratory judgment as set forth above;

(B)     rescission of the OMS investment in the Fund and return of the entire initial investment of $1 million to Plaintiff, plus applicable interest;

(C)     the costs and disbursements of this action and attorneys' fees; and

(D)     such other and further relief as this Court deems just and proper.


Dated:  April 1, 2008

JOSEPH UMBACH

BY: _____

Andrew B. Nevas
Federal Bar No. ct05059
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
P.O. Box 5116
Westport, CT 06881
Telephone:  (203) 222-0885
Facsimile:  (203) 226-8025
anevas@levettrockwood.com

154419