UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT    NEW HAVEN

1 26 2011

Roberta D. Tabora, Clerk

By

Deputy Clerk

------------------------------------X
                                    :
Joseph Umbach,                      :
                                    :
         Plaintiff,                 :        CIVIL NO.
                                    :
         v.                         :        3:08-CV-484  (EBB)
                                    :
CARRINGTON INVESTMENT PARTNERS,     :
ET AL.                              :
                                    :
         Defendants.                :
                                    :
------------------------------------X


## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT


### Introduction

Plaintiff, Joseph Umbach ("Umbach"), brought this action

for declaratory judgment and/or equitable relief pursuant to the

Declaratory Judgment Act, 28 U.S.C. § 2201 (a), and Section 10

(b) of the Securities Exchange Act of 1934 as amended, 15 U.S.C.

§ 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and the laws of

the states of Delaware and Connecticut, against defendants

Carrington Investment Partners (US), LP ("Fund"), Carrington

Capital Management, LLC ("General Partner") and Bruce Rose

("Rose") (collectively, "Defendants") in a six-count complaint.

Defendants previously filed a motion to dismiss, which the Court

1

granted in part and denied in part. The Court granted Defendants' motion to dismiss as to count one, wherein Umbach sought relief in the form of a declaratory judgment, and a portion of count three, wherein Umbach alleged a breach of fiduciary duty related to Defendants' conduct prior to Umbach's investment in the Fund. Five counts remain following the Court's ruling on Defendants' motion to dismiss: securities fraud (count two); breach of fiduciary duty with regard to Defendants' conduct following Umbach's investment in the Fund (count three); common law fraud (count four); negligent misrepresentation (count five); and breach of contract (count six).

Currently pending before the Court is Defendants' motion for summary judgment on these remaining counts [Doc. No. 88] and Umbach's cross motion for summary judgment on count six [Doc. No. 96]. For the following reasons, Defendants' motion for summary judgment with regard to counts two, four and five is GRANTED. Defendants' motion for summary judgment with regard to count three is DENIED. Defendants' motion with regard to count six is DENIED in part and GRANTED in part. Umbach's cross motion for summary judgment with regard to count six is also DENIED.

## I.   BACKGROUND

A.   Factual Background

The court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, the parties' cross motions for summary judgment.  For the purposes of these motions, the Court accepts undisputed facts as true and resolves disputed facts in favor of the non-moving party, where there is evidence to support such allegations.

In the mid 1990s, Umbach sold a company he had founded, Mistic Beverages, for approximately $95 million dollars.  Since that time, he became an "accredited investor" and "qualified purchaser" within the meaning of federal securities laws, because he had at least $5,000,000 in investments.  By May 2005, he had become a sophisticated and experienced hedge fund investor, and had established a portfolio of hedge funds with Ozcar Multi Strategies, LLC ("OMS"), as part of a leveraged investment program he had implemented through BNP Paribas, which controlled OMS.  OMS is a limited liability company organized under the laws of the State of Delaware.

Carrington Investment Partners (US), LP ("Fund") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business in

Greenwich, Connecticut. It is a hedge fund that invested in securities resulting from the securitization of subprime mortgage loans. Carrington Capital Management, LLC ("General Partner"), a limited liability company, also organized and existing under the laws of the State of Delaware with its principal place of business in Greenwich, is the general partner of the Fund. Bruce Rose ("Rose"), who resides in Connecticut, is the president and managing member of the General Partner.

At some point, Umbach and Defendants entered into negotiations regarding the Umbach's possible investment in the Fund. On or about May 12, 2005, Defendants forwarded various fund offering documents to Umbach. Included among these materials was a confidential offering memorandum ("CMO"), limited partnership agreement ("LPA") and a subscription agreement ("SA"). Section 3.9 of the LPA was entitled "Total and/or Partial Withdrawals by Partners; Penalties." Section 3.9.1 provided that:

> [A] Limited Partner may not withdraw any portion of its Capital Account with respect to each of its Interests (except for any portion attributable to the automatic reinvestment of dividends and other distributions of the Partnership) unless such portion has been invested with the Partnership for a period of not less than 12 months (the "lock-up period"). The General Partner may waive the lock-up period, in its discretion.

Section 14.4 of the LPA contained an integration clause which provided that the LPA would constitute "the entire

4

agreement between the Partner with respect to the subject matter hereof, and will supersede any prior agreement or understanding, oral or written, relating to the Partnership." The LPA, however, also permitted the General Partner to "enter into side letters that establish rights under, or alter or supplement the terms of [the LPA] or any Subscription Agreement."

On or about May 27, 2005, Umbach, through OMS, invested approximately $1 million into the Fund and became a limited partner. In a letter dated May 27, 2005, the parties entered into a side agreement of the sort contemplated in Section 14.4 of the LPA ("Side Letter"). The Side Letter provided the following, in relevant part:

> This letter certifies that Carrington Capital Management LLC has agreed to exempt Joseph Umbach or his investing entity (the "Investor") from the "lock-up" period as described in Section 3.9.1 of the Amended and Restated Agreement of Limited Partnership of Carrington Investment Partners (US), LP, (the "Fund"). . . . For any new additions to the interest, the same terms would apply.

The parties do not disagree as to the wording of the aforementioned documents. Rather, the proper interpretation of these documents and the communications between the parties in the run-up to Umbach's decision to invest with the Fund are the focus of the present litigation. More specifically, Umbach alleges that, prior to signing the Side Letter, he informed Rose that the existence of any lock-up period would be untenable for him and that neither he nor any of his affiliated investing

entities would invest in the Fund unless Defendants eliminated or permanently waived all lock-up periods. Umbach also alleges that Rose represented to him that his investment would not be subject to any lock-up period at any time, and that Umbach would at all times have a quarterly redemption right. Rose categorically denies these allegations.

Neither Umbach nor OMS sought to exercise any withdrawal rights during the twelve months following Umbach's investment in the Fund. On July 11, 2007, OMS submitted a written request to redeem its investment "at September 28, 2007 valuation."[1] On August 30, 2007, Rose sent a letter to the limited partners informing them that the Fund had received redemption requests from certain limited partners, but "[g]iven the potential timing

---

[1]In his original complaint, Umbach alleged that OMS' July 11, 2007 letter designated September 30, 2007 as the withdrawal date. Umbach now asserts that through discovery he learned that OMS actually designated September 28, 2007 as the withdrawal date. This discrepancy may be of some significance in the ultimate determination of the contractual effect of the subsequent amendment on Umbach's redemption request, a question which is not appropriate for summary judgment. See infra at § III (D).

Umbach recently moved for leave to amend his complaint to reflect the correct date. It is of course well within the discretion of a trial court to permit parties to amend their pleadings prior to trial. Fed. R. Civ. Pro. 15(a)(2) (although, in his motion to amend, Umbach cited Rule 15 (b), which pertains to amendments *during and after* trial, the Court construes his motion to have been made pursuant to Rule 15 (a), which governs amendments *before* trial). The Court, having found no reason that would justify a denial of Umbach's requested amendment, granted Umbach's motion to amend and ordered him to file an amended complaint forthwith [Doc. No. 136].

of these requests overlaid with general market conditions, we do not believe that sales of assets into the current market to meet the redemption requests is in the best interests of the limited partners as a whole." Section 11 of the LPA provided that, with certain restrictions, the LPA could be amended with the support of at least two-thirds of the outstanding interests in the Fund. Rose represented that a majority of the limited partners had requested a proposal to amend the LPA "in order to ensure that all limited partners will be treated equally." Rose concluded that "if the proposed amendment is approved, all limited partners will make a one-year commitment to the partnership and all currently pending withdrawal requests will be deemed to be rescinded." He attached to his letter a "Proposed Amendment," which reflected the terms described by Rose and advised the limited partners that they had until September 14, 2007 to vote on the Amendment.

On September 7, 2007, a document entitled "Amendment No. 1, dated as of September 30, 2007 to Second Amended and Restated Agreement of Limited Partners" was distributed to the limited partners. The revised amendment was accompanied by a document entitled "Amendment Election" which summarized the substance of the revised amendment and provided a space for the Limited Partners to record their votes. The Amendment Election provided

that it should be returned "as soon as convenient and in any event by September 14, 2007."

On September 13, 2007, a new document was sent to the limited partners. This document was accompanied by a memorandum which explained: "Based upon comments that we received from some of our Limited Partners, we attach a revised Amendment No. 1 to the Limited Partnership agreement as well as a revised election form." The memorandum requested that the attached revised election form either be executed or re-executed by the limited partners no later than September 19, 2007. Like the earlier versions, the second revised amendment included a provision rescinding pending withdrawals and implementing a new one-year luck up period. On September 19, 2007, Rose announced to the limited partners that the amendment had been approved by the requisite number of partners and, therefore, would become effective on September 30, 2007. OMS assigned all of its interest in the Fund to Umbach on December 7, 2007.

## II. STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of

the non-moving party. Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). It is the burden of the movant to show that no genuine factual dispute exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The non-moving party, however, "may not rely on conclusory allegations or unsubstantiated speculation. . . . If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted. . . . To defeat a motion, there must be evidence on which the jury could reasonably find for the [non-movant]." Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998) (internal citations omitted; internal quotation marks omitted).

### III. DISCUSSION

Five counts remain following the Court's ruling on Defendants' motion to dismiss: securities fraud (count two); breach of fiduciary duty with regard to Defendants' conduct following Umbach's investment in the fund (count three); common law fraud (Count Four); negligent misrepresentation (count five); and breach of contract (count six). For the sake of clarity and convenience, the Court will address the various legal issues, and rule accordingly, in the following order: In Part A of this opinion, the Court concludes that Defendants are entitled to summary judgment with regard to Umbach's claims of

securities fraud and common law fraud. In Part B, the Court concludes that Defendants are entitled to summary judgment with regard to Umbach's claim of negligent misrepresentation. In Part C, the Court concludes that Defendants are not entitled to summary judgment with regard to Umbach's claim of breach of fiduciary duty. In Part D, the Court concludes that, although neither Defendants nor Umbach are entitled to summary judgment with regard to the entirety of Umbach's breach of contract claim, Defendants' are entitled to partial relief on count six.

## A.   Fraud

In counts two and four of the complaint, Umbach maintains that Defendants violated Section 10 (b) of the Securities Exchange Act of 1934 as amended, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, as well as common law fraud. "Section 10(b) of the Securities Exchange Act of 1934 forbids (1) the 'use or employ[ment] ... of any ... deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and regulations.' 15 U.S.C. § 78j(b). Commission Rule 10b-5 forbids, among other things, the making of any 'untrue statement of a material fact' or the omission of any material fact 'necessary in order to make the statements made ... not misleading.'" Dura Pharmaceuticals, Inc. v. Broudo, 544

U.S. 336, 341 (2005). To establish a violation of Section 10(b), a plaintiff must show that the defendant (1) made a misstatement or omission of material fact, (2) with scienter, (3) in connection with the purchase and sale of securities, (4) upon which the plaintiff reasonably relied, (5) which proximately caused the plaintiff's damages. Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000). Common law fraud similarly has an intent requirement. See Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983) (fraud requires a false representation and knowledge or belief of its falsity).

Umbach alleges that during a phone conversation on or about May 18, 2005, Rose represented that in the event Umbach or "or any of his affiliated investing entities, including OMS, invested in the Fund, any such investment would not be subject to any lock-up period at any time, and could at all times be redeemed on a quarterly basis with only 30 days' prior written notice." Umbach claims that in making this statement Rose omitted a material fact by failing explicitly to inform Umbach that this assurance was subject to abrogation by an amendment to the LPA, and that in the event such an amendment was made, the Fund might not honor a quarterly redemption right.

As an initial matter, the parties disagree as to whether Rose even made such an oral promise to Umbach concerning his redemption rights or that he failed to adequately explain that

Umbach's redemption rights could potentially be rescinded by amendment to the LPA. Umbach states in his affidavit that he and Rose did in fact have such a conversation in which Rose promised that Umbach would always be able to redeem his investment with appropriate notice. Rose, on the other hand, states in his affidavit that he made quite clear to Umbach that he would only be exempted from a lock-up period for the first year of his investment. Defendants argue, without conceding that Rose made any misrepresentations, that they are entitled to summary judgment because Umbach is unable to establish that in making such misrepresentation or omission of material fact, Rose acted *with scienter*. Specifically, Defendants assert that Umbach has no evidence to prove that, at the time Rose made the alleged representations, he knew they were false. The Court agrees that Umbach has not made a sufficient showing that Rose engaged in a conscious effort to defraud him.

It is well established that "[i]f the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Id. at 322-23, accord, Goenaga v. March of Dimes
Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995)
(holding that a movant's burden is satisfied by showing the
absence of evidence supporting an essential element of the
nonmoving party's claim). Although courts are mandated to
"resolve all ambiguities and draw all inferences in favor of the
nonmoving party," Aldrich v. Randolph Central School District,
963 F.2d. 520, 523 (2d Cir. 1992), "[o]nly when reasonable minds
could not differ as to the import of the evidence is summary
judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d
Cir. 1991). If the nonmoving party submits evidence which is
"merely colorable," or is not "significantly probative," summary
judgment may be granted. Anderson, 477 U.S. at 249-50.

The Second Circuit has recognized that the failure to carry
out a promise made in connection with a securities transaction
"is normally a breach of contract. It does not constitute fraud
unless, when the promise was made, the defendant secretly
intended not to perform or knew that he could not perform."
Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir.
1993).

Mills is instructive here. Essentially, with regard to the
characterization of Umbach's claims based on Rose's
representations about redemption rights, Umbach alleges that
Rose promised him that he would always have quarterly redemption

rights, in conformity with his interpretation of the provisions of the Side Letter to the LPA, and that Rose failed to perform that promise. Umbach simply has insufficient evidence to establish that when Rose made that alleged promise, he knew that the LPA would be amended to prvent Umbach from withdrawing funds, or that he secretly intended not to perform that promise. To the contrary, the preponderance of the evidence supports the conclusion that Defendants' decision to amend the LPA to lock up quarterly withdrawals was based on liquidity concerns in the face of late summer 2007 economic conditions and the number of redemption requests received from limited partners - - conditions that Rose could not have known about or predicted in late spring 2005 when he allegedly made a representation to Umbach that he would always be able to redeem his investment on a quarterly basis. Put another way, the Court finds that the connection between the alleged misrepresentation and the act that would constitute the culmination of the fraud is simply too attenuated to establish scienter, the state of mind that is an essential element of the alleged fraud. Because Umbach has failed to submit evidence that is sufficiently probative of Rose's fraudulent intent at the time his alleged misrepresentations or omission was made, Defendants are entitled to summary judgment on counts two and four.

B. Negligent Misrepresentation

In count five, Umbach alleges that Defendants, and more specifically Rose, are guilty of negligent misrepresentation. Specifically, Umbach claims that Defendants "were careless and negligent in imparting the misrepresentations and omissions, had no reasonable grounds for believing the aforesaid representations to be true, or should have known them not to be true." Defendants have moved for summary judgment on this count, arguing, inter alia, that Umbach has failed to demonstrate that Rose acted recklessly in making the alleged misstatements or misrepresentations. The Court agrees. Negligent misrepresentation requires (1) a misrepresentation (2) that was known or should have been known to be such, (3) intended to induce action by the plaintiff, and (4) injury. See Kronenberg v. Katz, 872 A.2d 568, 585 (Del. Ch. 2004) (citing Gibbs v. Ernst, 647 A.2d 882, 889-90 (Pa. 1994)).

Analyzed under this rubric, Umbach's negligent misrepresentation claim fails for much the same reason his fraud claims fail; he cannot establish the second prong of the test, specifically, that Rose knew or should have known his alleged representations were false.

Even if the Court were to accept as true the fact that Rose told Umbach that his investment would always be redeemable, Umbach is required to also establish that Rose's

misrepresentation was made with knowledge of its falsity or that it was made under circumstances in which Rose ought to have known of its falsity. As explained above, the connection between the alleged misrepresentation about Umbach's unrestricted right to withdraw his investment on a quarterly basis and the Fund's actual suspension of all withdrawals through the amendment process is simply too attenuated to permit an inference of intent or knowledge. As previously noted, Umbach has not shown that Rose knew or could have known at the time Umbach made his investment that circumstances would necessitate a suspension of all withdrawals. In the absence of evidence establishing that Rose knew his representation was false or that he ought to have known of its falsity, Umbach has not satisfied the second prong of the test for establishing negligent misrepresentation, and Defendants are entitled to summary judgment on count five.

## C.    Breach of Fiduciary Duty

In count three, Umbach asserts a claim of breach of fiduciary duty based on his challenges to the fundamental fairness of the amendment. The Court is not persuaded by Defendants' arguments in support of summary judgment on this claim.

A claim for breach of fiduciary duty raises issues relating to the internal affairs of a business entity and therefore is governed by the law of the state of incorporation. See Walton v. Morgan Stanley & Co., Inc., 623 F.2d 796, 798 n. 3 (2d Cir. 1980). Under Delaware law,[2] it is well settled that in the absence of a contractual provision to the contrary, a general partner owes a fiduciary duty to the limited partners. E.g., Boxer v. Husky Oil Co., 429 A.2d 995, 997 (Del. Ch. 1981) (notes that statutory and common law both recognize that a general partner owes a fiduciary duty to limited partners). Accordingly, the general partner in a limited partnership has the duty to exercise the utmost good faith, fairness, and loyalty. Id. "Unless the partnership agreement preempts fundamental fiduciary duties, a general partner is obligated to act fairly and prove fairness when making self-interested decisions." Twin Bridges Ltd. v. Draper, WL 2744609 (Del. Ch. 2007).

Here, putting aside the applicability and interpretation of the Side Letter, Ubmach was merely attempting to exercise a contractual right as expressly provided for in the LPA -- redeeming his investment at the end of a quarter. But once Umbach filed his redemption request, the General Partner sought

_____

[2]In the present case, the limited partnership was formed under the laws of Delaware.

to abrogate this contractual right by amending the LPA to rescind all redemption requests. In doing so, it can fairly be said that the general partner was acting in its own self interest, and thus questions of fundamental fairness inevitably arise.

Significantly, while the LPA contemplated redemption lockups or delays in the event of a liquidy crisis, see LPA 3.9.1 (providing a specific mechanism by which the General Partner could delay the repayment of redemption requests in the event of an extraordinary hardship), the general partner did not avail itself of this provision, but rather sought to amend the LPA in a way that would circumvent the prior redemption process to which all limited partners had agreed. By virtue of such legal maneuvering, the general partner was able to essentially reset the order of limited partner redemptions. This alone is sufficient to raise an inference of bad faith and unfair dealing. For these reasons, Defendants' motion for summary judgment on count five is denied.

## D. Breach of Contract

In count six, Umbach alleges that in failing to honor OMS's request to redeem its interest in the Fund, Defendants breached the terms of the Side Letter in conjunction with the LPA, which constituted an integrated contract between the parties. The

Court concludes that the contract is ambiguous with regard to several critical terms, thus necessitating extrinsic evidence which will require credibility assessments. Thus, the cross motions for summary judgment on count six are DENIED (although, as the Court will explain below, Defendants' motion is granted in part).

It is axiomatic that review of a summary judgment motion requires the Court to pierce the pleadings and to assess the proof in order to see if there is a genuine need for trial. Under Delaware law, interpretation of the language in a contract is a question of law. Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020, 1030 (Del. Ch. 2006).[3] Typically, "[s]ummary judgment is an appropriate process for the enforcement of unambiguous contracts because there is no material dispute of fact for the court to resolve." Comet Systems, Inc. Shareholders' Agent v. MIVA, Inc., 980 A.2d 1024, 1030 (Del. Ch. 2008). The terms used in a contract are

---

[3] Umbach's action for breach of contract comes within the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)(1), which grants federal district courts "original jurisdiction of all civil actions" that meet the requirements for federal diversity jurisdiction enumerated therein. A federal court sitting in diversity applies the choice of law rules of the state in which it sits." See Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008). Connecticut courts favor the enforcement of contractual choice of law provisions. See Reichhold Chemicals, Inc., v. Hartford Accident & Indemnity Co., 252 Conn. 774, 788, 750 A.2d 1059 (2000). Accordingly, this claim is governed by Delaware law pursuant to the LPA's choice of Delaware law as the law governing contract disputes.

controlling when there is no question as to what the parties intended or meant so that a reasonable person in the position of either party would not have any expectations that are inconsistent with the contract language. Eagle Indus. v. DeVilbiss Healthcare, 702 A.2d 1228, 1232 (Del. 1997). This is not the case where the terms are ambiguous. Thus, when the contractual provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings, the contract is ambiguous and the interpreting court must look beyond the language of the contract to ascertain the parties' intentions. Id.

The Court will address the issues pertaining to a breach of contract in the following order. The Court first analyzes Umbach's allegation that the amendment was adopted by means of an improper voting procedure that violated the terms of the LPA. In doing so, the Court concludes that the voting procedure did not violate the terms of the LPA and, therefore, dismisses this portion of Umbach's claim. The Court next addresses Defendants' claim that the Side Letter did not grant OMS immutable redemption rights in the Fund or waive the ability to amend the LPA to lock-up Umbach's investment in the Fund following the initial twelve month period, and Umbach's counter argument that the Side Letter granted him permanent immunity from lockup periods, even if the LPA were to be amended. The Court

concludes that neither party is entitled to summary judgment with regard to this issue. Finally, the Court addresses Umbach's claim that, even if the amendment was validly passed, his right to redeem his investment was perfected prior to the amendment's adoption, thereby rendering the amendment inapplicable to his withdrawal request. The Court again concludes that neither party is entitled to summary judgment with regard to this issue.

## 1.    Voting Procedures

Section 6.3 of the LPA governs voting procedures. It provides that limited partners would be deemed to have voted as requested by the general partner on a particular matter unless they objected in writing within twenty days. According to Umbach, Defendants breached this provision by requesting that limited partners vote on the final version of the amendment in fewer than twenty days. The Court disagrees with Umbach's interpretation of the plain language in this section of the LPA.

Section 6.3 does contain an expiration date for the casting of votes, but it does not require the general partner to await all dissenting votes when a requisite number of limited partners have already voted in favor of a proposal. It also does not preclude the general partner from requesting that limited partners cast their vote in less than twenty days. Although the

21

Supreme Court of Delaware has held that in some instances involving corporate voting procedures "inequitable action does not become permissible simply because it is legally possible," Schnell v. Chris-Craft Industries, Inc., 285 A.2d 437, 439 (Del. 1971), this doctrine has been tempered somewhat, and is to be exercised with "caution and restraint." Alabama By-Products Corp. v. Neal, 588 A.2d 255, 258 fn.1 (Del. 1971). Invocation of this equitable principle "should be reserved for those instances that threaten the fabric of law, or which by an improper manipulation of the law, would deprive a person of a clear right." Id. It is not applicable here, where there is nothing about the designated voting period that threatens the fabric of law, or deprives anyone of a clear right. Indeed, as the Court previously noted, the issue of whether Umbach had unfettered quarter redemption rights is unclear. Simply put, the Court concludes that in the absence of a clear right the challenged voting procedure did not constitute a breach of contract. Accordingly, this aspect of Umbach's breach of contract claim is dismissed.

## 2. The Side Letter

At the time the Side Letter was executed, the only lock-up provision that existed was the one in the LPA which provided that no redemptions could be made during the initial twelve

months of an investment. The LPA was silent as to redemption rights thereafter. As such, when the Side Letter and the LPA are construed together, as they must be, there is ambiguity with regard to the meaning and extent of "lock-up period." For example, it is unclear whether the term "lock-up period," as it is used in the Side Letter, refers (1) to any period in which a limited partner may not withdraw any portion of its funds, or (2) specifically to the 12 month period following an initial investment in which limited partners could not withdraw investment funds. This ambiguity is further evidenced by the seeming illogic of securing an exemption from a lock-up of funds for only the first twelve month period following an investment.

Given the ambiguity identified above, the parties' disagreement with regard to the proper interpretation of the side letter can only be resolved with extrinsic evidence, such as Umbach's assertion that Rose made a verbal commitment to him. Because there is a factual dispute with regard to what Rose said to him, resolution of this issue must be left to the fact finder's determination based on its assessment of the credibility of each party. Thus, this claim cannot be decided on summary judgment. See e.g., Cerberus Intern., Ltd. v. Apollo Mgnt., L.P., 794 A.2d 1141, 1152 (Del. 2002)(noting that if the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate). In addition,

other extrinsic evidence, such as industry practices, may also aid in interpreting the contract.[4]

### 3. The Amendment as Breach of Contract

Similarly, the issues of the amendment's fundamental fairness and whether its adoption constituted a breach of contract cannot be resolved on summary judgment. In this regard, there are disputed material facts that preclude the determination, as a matter of law, as to whether an amendment to the LPA could rescind a withdrawal request that was pending at or prior to the time of the amendment's adoption. Indeed, the

_____

[4] Prior to Umbach's investment in the fund that is at issue here (which Umbach financed through his investment program with BNP Paribas) Umbach attempted to invest in the Fund through an investment program he maintained with HSBC USA Inc. ("HSBC"). During the early stage of negotiations in connection with that attempt, Defendants accepted a side letter proposed by Umbach that was materially the same as the one that was eventually signed in connection with the investment at issue here. According to Umbach, he switched to the BNP Paribas program because Defendants rejected an additional side letter, requested by HSBC, that would have required the Fund to report to HSBC if HSBC's total investment went above nineteen percent of the aggregate investments in the Fund and, in such event, to provide the right to immediate redemption.

Defendants claim that the very fact that HSBC requested an additional side letter regarding redemption rights is proof positive that Umbach did not believe the first side letter provided him with a permanent right to quarterly redemption. Contrary to Defendants' contention, however, Umbach's alternative inferences on this issue should be presented to the jury for resolution. Because the Court does not find the defendants' interpretation to be the only reasonable inference that can be drawn from the evidence, summary judgment is not appropriate.

24

Court notes that though the amendment at issue is not specifically precluded by the LPA, the LPA is vague with regard to the extent to which it could be amended.  Thus, the LPA cannot be interpreted, as a matter of law, as being subject to amendment ad infinitum, without restriction or limitation.  The Court is unable to determine whether the LPA could be amended to rescind pending redemption requests, or, even if it could, whether the amendment applied to Umbach's redemption request which stated a valuation date of September 28, 2007.  This determination should be guided by extrinsic evidence as to the subjective expectations of the parties with regard to the limitations, if any, of the amendment process.

In sum, the agreements governing the rights and obligations of the parties in this action are ambiguous with regard to several critical, material issues and thus Umbach's breach of contract claims cannot be resolved on summary judgment.

**ORDER**

For each of the reasons set forth herein, Defendants'
motion for summary judgment as to counts two, four and five is
granted. Defendants' motion for summary judgment on count three
is DENIED. Defendants' motion for summary judgment on count six
is GRANTED in part, and DENIED in part. Umbach's cross motion
for summary judgment on count six is DENIED.

SO ORDERED this 26th day of January, 2011 at New Haven,
Connecticut.

/s/ Ellen Bree Burns, SUSDJ

ELLEN BREE BURNS,
SENIOR JUDGE UNITED STATES DISTRICT COURT